UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BLANCHE A.,[1]                       Case No. 1:24-cv-648
    Plaintiff,                          Litkovitz, M.J.

vs.

COMMISSIONER OF                  **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Blanche A. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 9), the Commissioner's response (Doc. 11), and plaintiff's reply (Doc. 12).

**I.    Procedural Background**

Plaintiff protectively filed her application for SSI on December 16, 2021, alleging a disability onset date of January 1, 2021,[2] due to swollen feet, aching leg, neck cramps, and headaches. (Tr. 174–77, *see also* Tr. 10, 193). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Cristen Meadows. Plaintiff and a vocational

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on December 16, 2021. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 Fed. Appx. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

expert (VE) appeared telephonically and testified at the ALJ hearing on May 19, 2023. (Tr. 36–66). On August 24, 2023, the ALJ issued a decision denying plaintiff's application. (Tr. 7–24). This decision became the final decision of the Commissioner when the Appeals Council denied review on December 13, 2022. (Tr. 1–6).

II.  Analysis

A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

>1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
>2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
>3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
>4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

>  5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

>  1. [Plaintiff] has not engaged in substantial gainful activity since December 16, 2021, the application date (20 CFR 416.971 *et seq.*).
>
>  2. [Plaintiff] has the following severe impairments: migraine headaches, hypertension, degenerative disc disease of the cervical and lumbar spines, osteoarthritis of the knees (20 CFR 416.920(c)).
>
>  3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
>  4. After careful consideration of the entire record, [the ALJ] find[s] that [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she could frequently climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, crawl;

avoid concentrated exposure to noise at more than the moderate level as defined in the Selected Characteristics of Occupations (SCO); avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation; and avoid concentrated exposure to light brighter than a typical office.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).[3]

6. [Plaintiff] was born [in] … 1963 and was 58 years old, which is defined as an individual of advanced age, on the date the application was filed. [Plaintiff] subsequently changed age category to closely approaching retirement age (20 CFR 416.963).

7. [Plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969a).[4]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since December 16, 2021, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12-20) (footnotes added).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[3] Plaintiff had self-employment as a babysitter in 2009, 2013, and 2014, but her earnings did not meet the threshold to qualify as past relevant work. (Tr. 19, 61-62).

[4] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as a dining room attendant (56,000 jobs in the national economy), a kitchen helper (275,000 jobs in the national economy), or a counter supply worker (113,000 jobs in the national economy). (Tr. 19-20, 63-64 ).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

**D. Specific Errors**

Plaintiff raises three assignments of error: (1) the ALJ erred in evaluating her allegations of pain and dysfunction; (2) the ALJ's residual functional capacity (RFC) finding is unsupported by substantial evidence because the ALJ failed to explain how an individual with abnormal objective findings could perform medium exertional work; and (3) the ALJ failed to evaluate the medical source opinion of Aaron Freeman, A.P.R.N., C.N.P. (Doc. 9 at PAGEID 472–80). The

Commissioner counters that substantial evidence supports the ALJ's subjective symptom analysis and RFC finding. (Doc. 11 at PAGEID 488-95).

### 1. The ALJ's subjective symptom analysis is supported by substantial evidence.

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16–3p, 2016 WL 1119029, at *2. ALJs also evaluate the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two–step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16–3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 416.929(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work–related activities. *See* 20 C.F.R. §§ 416.929(a) and (c); SSR16–3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i)    Your daily activities;

    (ii)      The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)     Precipitating and aggravating factors;

    (iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16–3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the

individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16–3p, 2016 WL 1119029, at *9. *See also Id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

In this case, the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged but found her statements concerning the intensity, persistence and limiting effects of these symptoms not entirely consistent with the medical and other evidence in the record. (Tr. 17). In reaching this conclusion, the ALJ specifically discussed the following evidence, consistent with 20 C.F.R. § 416.929(c)(3).

Plaintiff reported babysitting for an eight-year-old child three to four days per week, attending church, walking to her sister's home, and standing for thirty minutes without pain (Tr. 15). Although plaintiff reported edema and pain in her legs in June 2021, her medical examination at that time revealed normal gait, no edema, and normal systems except for noting pain in her ankles. (Tr. 16, citing Tr. 268). During her April 2022 consultative examination with Dr. Phillip Swedberg, M.D., plaintiff reported feeling as though her legs would give out after standing for three hours, but, on exam, her gait was normal, she required no assistive device, her strength and neuromuscular findings were normal and without weakness. (Tr. 16, citing Tr. 293-300). Although Dr. Swedberg noted plaintiff's difficulty in forward bending and crepitus with range of motion of both knees, her examination was otherwise unremarkable. (Tr. 16, citing Tr. 300).

In May 2022, plaintiff reported headaches occurring every other day and numbness in the big toe on her left foot. (Tr. 16, citing Tr. 309). Her medical examination was normal except for paresthesia of her big toe. The examination of her extremities revealed no edema. (Tr. 16, citing Tr. 311-12). Her medical provider diagnosed essential hypertension and migraine, not intractable, and prescribed amitriptyline and recommended stretching. (Tr. 16, citing 312-313). Plaintiff declined electromyography for further evaluation unless her symptoms worsened. (Tr. 16, citing 313).

In August 2022, plaintiff reported back pain and left ear pain that began one week earlier. (Tr. 16, citing Tr. 362). Her physical examination revealed a dysfunction of her left eustachian tube and pain to her paraspinal region on palpation, but her gait and spinal range of motion were normal. (Tr. 365). Her care provider adjusted her medication for back pain, but plaintiff declined physical therapy at that time. (Tr. 16, citing Tr. 365).

In January 2023, plaintiff again reported headaches with neck stiffness, back pain, hyperlipidemia and hypertension. (Tr. 16, citing Tr. 378). Plaintiff was compliant with her medications and reported no symptoms associated with hyperlipidemia or hypertension. (Tr. 16, citing Tr. 379). Her medical examination revealed left-sided neck and lower back tenderness to palpation, but all other findings were normal. (Tr. 16, citing Tr. 382). She ambulated with a steady gait and required no assistive device. (*Id.*). After the hearing before the ALJ, plaintiff underwent consultative diagnostic imaging of her spine and left knee. (Tr. 16, citing Tr. 433-37). The imaging revealed mild osteoarthritis in her left knee and degenerative changes in her cervical and lumbar spine, with grade 1 degenerative spondylolisthesis at L4-5. (*Id.*).

Plaintiff contends that the ALJ "failed to provide adequate reasons for rejecting Plaintiff's allegations of pain and dysfunction." (Doc. 9 at PAGEID 474). The Court disagrees.

First, the ALJ explicitly cited the reasons for finding the intensity and limiting effects of plaintiff's impairments not entirely consistent with the medical and other evidence in the record, including:

1) plaintiff's "infrequent, routine, and conservative" medical treatment (Tr. 17);

2) the consistently normal medical examinations of plaintiff's back regarding gait and station (Tr. 18);

3) the post-hearing diagnostic imaging that revealed only mild left knee osteoarthritis and degenerative changes in the cervical and lumbar spin without any indication for radicular symptoms or stenosis and spondylolisthesis that was "noted as grade 1 and without nerve root involvement" (Tr. 18); and

4) the opinions of state agency consultant physicians Dr. Gerald Klyop and Dr. Leon Hughes, M.D., and consultative examiner Dr. Phillip Swedberg, M.D., all of whom concluded that plaintiff can perform medium exertional work with additional limitations (Tr. 17-18).

Second, the ALJ did not "reject" plaintiff's allegations of pain and dysfunction. Instead, the ALJ—recognizing that plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms—added greater limitations to address plaintiff's migraine triggers, foot numbness, and hypertension with lower extremity swelling. (Tr. 17). Specifically, the ALJ limited plaintiff to never climbing ladders, ropes or scaffolds; avoiding concentrated

exposure to noise at more than the moderate level; avoiding concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation; and avoiding concentrated exposure to light brighter than a typical office. (Tr. 14, 17-18). Therefore, the ALJ's symptom severity evaluation is supported by substantial evidence, and plaintiff's first statement of error will be overruled.

### 2. The ALJ's RFC determination is supported by substantial evidence.

The RFC assessment is an evaluation of the most a claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). The ALJ is vested with the responsibility for assessing a claimant's RFC based on the relevant medical and other evidence. 20 C.F.R. §§ 416.945(a)(3), 416.946(c). "[T]he threshold for such evidentiary sufficiency is not high." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "[T]he decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Id.* (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because plaintiff's physical examinations and diagnostic imaging showed abnormal results, the ALJ failed to provide a narrative discussion showing how the evidence supports the RFC finding, and the ALJ relied heavily on the medical opinions of the state agency consultants to determine plaintiff's RFC for medium exertional work, even though those medical consultants did not have the benefit of plaintiff's July 2023 diagnostic imaging results. (Doc. 9 at PAGEID

475-77). The Commissioner counters that the ALJ considered all the evidence, including the medical records on which plaintiff relies, and reasonably concluded that plaintiff could perform a limited range of medium work. The Commissioner further contends that, although the state agency physicians did not have access to the evidence submitted after the hearing date, the ALJ specifically considered that evidence in formulating the RFC. (Doc. 11 at PAGEID 492-95).

As detailed above, the ALJ considered, discussed, and cited to many of the same medical records plaintiff now cites in support of this alleged error. Specifically, the ALJ discussed plaintiff's "crepitus with range of motion in both knees" (which Dr. Swedberg diagnosed as osteoarthritis of the knees) and her "difficulty forward bending." (Tr. 16, citing Tr. 300). The ALJ noted plaintiff's ankle pain (Tr. 16, citing Tr. 268), paresthesia in her toe (Tr. 16, citing Tr. 309, 312), and edema in her ankles (Tr. 16, citing Tr. 268).[5] The ALJ further discussed plaintiff's July 2023 diagnostic imaging which revealed "mild left knee osteoarthritis, cervical degenerative changes most pronounced at C5-C6 levels, and degenerative changes in the lumbar most pronounced at L3-S1 levels, with grade 1 degenerative spondylolisthesis at L4-5." (Tr. 16, citing Tr. 435-37). However, the ALJ explained that, despite those impairments:

> Overall, [plaintiff's] back issues have been managed conservatively and her exams are consistently normal regarding gait and station. [Plaintiff's] diagnostic imaging post hearing noted only mild left knee osteoarthritis and degenerative changes in the cervical and lumbar without any indication for radicular symptoms or stenosis. Her imaging did show spondylolisthesis at L4-5 but noted as grade 1 and without nerve root involvement at this time. Given her mild osteoarthritis in the left knee confirmed on imaging and exam findings in both knees (crepitus) by the consultative examiner, and degenerative changes in the cervical and lumbar confirmed by imaging post-hearing, the [state agency consultative] opinions are consistent with the record overall that shows [plaintiff] can perform medium

---

[5] The medical record to which plaintiff cites in support of edema in her ankles specifically describes the severity of such edema as "trace." (Tr. 373).

>exertional work except frequently climb ramps or stairs, as well as frequently stoop, kneel, crouch, crawl.

(Tr. 18). To accommodate plaintiff's headaches, asymptomatic hypertension, and numbness in her toe, the ALJ added the limitation that she never climb ladders, ropes, or scaffolds. (Tr. 17). The ALJ also "added greater limitations, particularly to address migraine triggers," including avoiding concentrated exposure to noise at more than the moderate level; avoiding concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation; and avoiding concentrated exposure to light brighter than a typical office. (*Id.*).

Because the ALJ both considered the specific impairments to which plaintiff now cites and explained why she found them consistent with the RFC for medium exertional work with additional limitations, plaintiff's contention in essence invites the Court to reweigh the evidence before the ALJ. *See Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (Where substantial evidence supports the ALJ's evaluation of a medical opinion, arguments supporting a contrary opinion "are a veiled attempt to have [the Court] reweigh the evidence."). As explained above, the ALJ considered the relevant medical evidence in the record and reasonably concluded that plaintiff could perform a reduced range of medium work with additional limitations.

As for the ALJ's reliance on the state agency physicians' opinions, even though they did not have access to the evidence submitted after the hearing date, the ALJ specifically considered that evidence in formulating the RFC. The law is well-settled that:

>[T]he ALJ was ***not*** required to obtain an updated medical opinion to evaluate the new medical evidence. Instead, the ALJ was entitled to rely on the opinions of the state agency medical and psychological consultants, even if the record contained

13

> later-submitted evidence, as long as the ALJ considered the later records and accounted for any relevant differences in them. *E.g., McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency medical consultant's] assessment, . . . including [a treating neurologist's] contrary assessment, and took into account any relevant changes in McGrew's condition."); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) . . . .

*Molly H. v. Comm'r of Soc. Sec.*, No. 3:24-cv-00181, 2025 WL 2630681, at *12 (S.D. Ohio Sept. 12, 2025). *See also Nadia T. v. Comm'r of Soc. Sec.*, No. 3:25-cv-121, 2026 WL 45099, at *9 (S.D. Ohio Jan. 7, 2026), *report and recommendation adopted*, 2026 WL 173828 (Jan. 22, 2026).

Here, the ALJ discussed at some length plaintiff's July 2023 diagnostic imaging. (Tr. 10, 16, 18).[6] The ALJ discussed the degenerative changes in plaintiff's spine but specifically noted that there was no indication for radicular symptoms or stenosis and that plaintiff's spondylolisthesis was grade 1 and without nerve root involvement. (Tr. 18). In addition, rather than being inconsistent with consultative examiner Dr. Swedberg's opinion, the July 2023 imaging confirmed his opinion related to mild osteoarthritis in plaintiff's left knee, and the ALJ "accorded consideration" to "Dr. Swedberg's finding about crepitus in both knees." (Tr. 18)

---

[6] In addition to plaintiff's 2023 diagnostic imaging, plaintiff references physical therapy records from 2019 that note decreased range of motion in her neck. (Doc. 9 at PAGEID 476, citing Tr. 409, 413, 417, 419, 423, and 426). The ALJ held open the record for thirty days after the 2023 hearing so plaintiff could submit these 2019 records. (Tr. 10). The ALJ considered those records in her RFC, stating:
> Prior to the alleged onset date, [plaintiff's] record does show a history of acute neck pain and decreased range of motion associated with difficulty sleeping and impaired mobility for which she had seven physical therapy sessions in 2019 and had reported 50% improvement in her symptoms (5F/3-4). She was transitioned to home exercises and reported ongoing headaches and neck pain with function and disrupted sleep at that time (5F/5).

(Tr. 15).

14

(Compare Dr. Swedberg's impression of "Probably osteoarthritis, knees" (Tr. 300) with the imaging reading physician's impression of "Mild left knee osteoarthritis" (Tr. 434)).  Therefore, the ALJ's RFC determination as to plaintiff's physical impairments is supported by substantial evidence, and plaintiff's second statement of error will be overruled.

### 3. The ALJ properly evaluated the opinion of Aaron Freeman A.P.R.N., C.N.P

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[7]  20 C.F.R. § 416.920c(a).  Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 416.920c(c)(1)–(5).  The most important factors the ALJ must consider are supportability and consistency.  20 C.F.R. § 416.920c(b)(2).  With respect to the supportability factor, "[t]he more relevant the objective medical evidence[8] and supporting

---

[7] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.
[8] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

As used in 20 C.F.R. § 416.920c, a "medical opinion" "is defined as 'a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [specified physical, sensory, or environmental areas].'" *Cindy S. v. Comm'r of Soc. Sec.*, No. 2:25-cv-293, 2026 WL 177844, at *2 (S.D. Ohio Jan. 22, 2026) (quoting 20 C.F.R. § 416.913(a)(2)). An ALJ is not required to perform a § 416.920c(c) assessment of routine medical treatment notes that do not meet the definition of a "medical opinion." *Id.* (Medical provider's recommendation that a plaintiff elevate her legs when sitting as a means of treating edema does not meet the definition of

16

"medical opinion" and requires no assessment under § 416.920c(c)(1)-(5) nor explanation for supportability and consistency.); *see also Tina D. v. Comm'r of Soc. Sec.*, No. 3:22-cv-152, 2023 WL 2759861, at *5-6 (S.D. Ohio Apr. 3, 2023) and *Bobbie N.E. v. Comm'r of Soc. Sec.*, No. 3:20-cv-524, 2022 WL 4151752, at *3 (S.D. Ohio Sept. 13, 2022).

In a June 2021 treatment note, plaintiff's treating nurse practitioner, Mr. Freeman, recommended that she elevate her legs "at night and while resting at home" for her leg pain. (Tr. 266, 335). Plaintiff argues that the ALJ failed to assess Mr. Freeman's medical opinion under 20 C.F.R. § 416.920c. (Doc. 9 at PageID 478). In addition, plaintiff contends that her "need to elevate her feet during the day" will prevent her from meeting the requirements for medium exertion work and "may also" result in her being off task for 15% of the workday which, according to the vocational expert, would preclude the performance of all work. (Doc. 9 at PAGEID 479).

Mr. Freeman's partial sentence treatment note recommending "elevating legs at night and while resting at home" (Tr. 266, 335) completely fails to meet the definition of a "medical opinion" that requires a §416.920c assessment. The treatment note does not constitute an opinion about what plaintiff can do despite her ankle pain or edema or whether she has impairment-related limitations or restrictions in any of the specified categories of activity.

As for plaintiff's contention that plaintiff's "need to elevate her feet during the day" may result in her being off task or unable to perform medium exertion work (Doc. 9 at PAGEID 479), even Mr. Freeman's treatment note contains no such implication. He recommended only that plaintiff elevate her legs "at night and while resting at home." (Tr. 266, 335). As court's have

uniformly recognized, such "stray recommendations" "are too vague to constitute medical opinions or support specific functional limitations." *Cindy S.*, 2026 WL 177844, at *3 (quoting *Bobbie N.E.*, 2022 WL 4151752, at *4). Because Mr. Freeman provided no medical source opinion for the ALJ to assess and because his treatment note is too vague to support a functional limitation, plaintiff's third statement of error will be overruled.

### III.  Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 9) is **OVERRULED, and** the Commissioner's non-disability finding is **AFFIRMED.  IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:  2/6/2026

Karen L. Litkovitz
United States Magistrate Judge